UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARBLE BRIDGE FUNDING GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY,<br><br>    Defendant. | Case No. 5:12-cv-02729-EJD<br><br>**ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 182 |

This case involves a type of commercial financing known as "factoring." Plaintiff Marble Bridge Funding Group ("MBFG") is a "factor," or a company that provides accounts receivable financing to growing businesses that sell their products or services to other businesses. See Am. Compl., Docket Item No. 176, at ¶ 3. "Factoring" provides these businesses, the "sellers" in this scenario, with funds earlier than the 45-60 days they would otherwise need to wait for payment of outstanding invoices, which in turn allows them to continue operations and grow. Id.

MBFG alleges it was induced by Defendant Euler Hermes American Credit Indemnity Company ("Euler') to buy out another factor, Liquid Capital, who had purchased accounts receivable invoices from another business, Nature's Own Pharmacy LLC. Id. at ¶¶ 8-9. In the end, Nature's Own turned out to be a fraud with manufactured invoices, and Euler, who had insured Nature's Own accounts receivable, did not pay claims that MBFG made on the policy.

MBFG filed an Amended Complaint in this action[1] on September 12, 2015, to which Euler

---

[1] MBFG has brought two other cases related to the Nature's Own scheme, Marble Bridge Funding Group v. Nature's Own Pharmacy LLC, Case No. 5:12-cv-01839-EJD, and Marble Bridge

1
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

filed an Amended Answer and Counterclaims. See Docket Item No. 177. Two of those counterclaims, for rescission of the Nature's Own Policy (Counterclaim IV) and for fraud and deceit (Counterclaim V), either affect or are asserted against MBFG.

Presently before the court is MBFG's Motion to Dismiss the two counterclaims. See Docket Item No. 182. Euler has filed written opposition to the Motion. See Docket Item No. 185. The court found this matter suitable for disposition without oral argument and previously vacated the associated hearing date.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Having carefully considered the parties' arguments, MBFG's Motion to Dismiss will be granted in part and denied in part for the reasons explained below.

## I.   FACTUAL BACKGROUND

Since November 1, 2010, Nature's Own Pharmacy LLC had a credit insurance policy with Euler. See Answer, at ¶ 19. The original policy was designated at Policy No. 5033862, and was renewed on November 1, 2011, at Policy No. 5041669. Id.

### A.   The Terms of the Nature's Own Policy

The coverage grant of the Policy provided that "[Euler] will provide [Nature's Own] insurance against credit losses described in the Policy, subject to the terms and conditions stated within, in return for the Premium and [Nature's Own compliance with the provisions of the Policy . . . ." Id. at ¶ 21. It also provided that "[s]ubject to terms and conditions of this Policy, [E]uler will cover [Nature's Own] against credit losses due to non-payment of amounts due from a covered Buyer for Shipments of Covered Products made by [Nature's Own] during the Policy Period . . . ." Id.

The way several terms were defined in the Policy clarifies the scope of the coverage grant. A "Buyer," or a customer of the insured, was defined as "a legal entity and its branch offices, trade

---

Funding Group v. Liquid Capital Exchange, Inc., Case No. 5:15-cv-00177-EJD, both of which are now also assigned to the undersigned.

2

Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

styles, divisions, if any, which is domiciled in the United States (including Puerto Rico) or Canada and is approved for coverage under the Policy," but "does not include subsidiaries or affiliated corporations, which are separate legal entities." Id. at ¶ 21 n. 8. "Credit Losses" were defined as "1. The Insolvency of a covered Buyer, or 2. Protracted Default due to slow payment of a covered Buyer." Id. at ¶ 21 n. 7. "Covered Products" were defined as "the products and/or services, including associated labor and service costs, described in the Declaration." Id. at ¶ 22. Specific to the Nature's Own Policy, "Covered Products" were specified as "PHARM PRODUCTS/ NATURAL/ ORAGNIC/ ENVIRON PRODTS." Id.

As the coverage grant states, there must be "Shipments of Covered Products," a phrase which was defined as "Covered Products which are Dispatched by [Nature's Own] and Delivered to a Buyer." Id. at ¶ 23. "Dispatched" means "the point in time when Covered Products leave [Nature's Own's] control," and "Delivered" means "the point in time when legal title to and the risk of loss of the Covered Products have left [Nature's Own] custody and physical control." Id. at ¶ 23.

Putting all of this together, Euler alleges that, because the definition of "Covered Products" requires the occurrence of some bona fide transaction, the existence of invoices alone does not trigger coverage if those invoices do not represent the actual exchange of a product or service from a seller to a buyer. Id. at ¶ 22. Furthermore, transactions on paper do not trigger coverage under the definition of "Shipments" unless goods physically move from a seller to a buyer, along with transfer of title. Id. at ¶ 23. As Euler puts it, "[j]ust because somebody prints out an invoice and claims that it is 'unpaid' does not provide a basis for coverage." Id. at ¶ 24.

### B. MBFG and the Policy

Approximately six months after the Policy was issued, Nature's Own, Inc. and MBFG requested that MBFG be added as a beneficiary of the Policy due to a change in Nature's Own's relationship with another factor, Liquid Capital. Id. at ¶ 25. Thus, on July 3, 2011, MBFG was made a beneficiary through a document entitled "Bank/Lender Policy Beneficiary Endorsement,"

3
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

which granted MBFG the same rights under the Policy that Nature's Own would have had absent the beneficiary designation. Id. Around that same time, on June 22, 2011, MBFG entered into a Receivables Purchase Agreement with Nature's Own after conducting its own due diligence in evaluating Nature's Own business, its principals and account debtors. Id. at ¶¶ 26, 44.

Nature's Own was primarily represented by two individuals, its president, Richard Wallace and its account manager, Anette Zimmerman, and presented itself to both MBFG and Euler as a legitimate business engaged in the sale of pharmaceutical products and supplements to customers. Id. at ¶ 29. At the time MBFG was added as a beneficiary to the Policy, no claims had been filed for any unpaid receivables, and invoices "factored" prior to MBFG's involvement had been paid from accounts at known banks. Id. at ¶ 28.

However, Nature's Own's legitimacy turned out to be false. Euler alleges that Nature's Own fabricated the information it provided to Euler in 2010 to obtain the Policy, including information concerning its major customers as well as information describing its sales and receivables. Id. at ¶ 38. In addition, Euler received information in or around February, 2012, that certain Buyers on the Nature's Own Policy were suspicious and possibly fraudulent. Id. at ¶ 49. According to Euler, Zimmerman made the misrepresentations as part of a scheme to defaud Euler into issuing the Policy, which it would not have done had it known the true facts. Id. at ¶ 40-41.

After learning of Nature's Own potentially fraudulent activity, Euler cancelled the Credit Limits[2] on suspicious Buyers on February 27th and February 29, 2012. Id. at ¶ 49.

### C. MBFG's Claim on the Policy and Ensuing Litigation

On March 7, 2012, MBFG filed claims on the Nature's Own Pharmacy LLC Buyers whose credit limits had been cancelled. Id. at ¶ 50. Euler alleges that, at the time MBFG filed the claims, it did not disclose to Euler that it had received "extensive information" that Nature's Own, its Buyers, and the invoices and bills of lading purchased by MBFG were fraudulent and part of a

---

[2] "Credit Limits" is defined under the Policy as "the maximum amount of coverage [Euler] will allow for each Buyer." See Answer, at ¶ 176. "Each Buyer has its own Credit Limit which is either assigned by [Euler] or qualified by the Insured under the Discretionary Credit limit." Id.

4
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

1  scheme perpetrated by Nature's Own's principals. Id. at ¶ 51. According to Euler, this "extensive

2  information" known to MBFG included the fact that "no businesses exist and no product was ever

3  manufactured, shipped or received" by Nature's Own." Id. at ¶ 53.

4  MBFG filed an action against Nature's Own Pharmacy LLC and its principals in this court

5  on April 12, 2012. Id. at ¶ 52. MBFG then filed this action against Euler on May 29, 2012.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

Causes of action based in fraud require more detail. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007). In other words, claims of fraudulent conduct must generally contain more specific facts than is necessary to support other causes of action.

When deciding whether to grant a motion to dismiss, the court generally "may not consider

5
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir.2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

## III. DISCUSSION

MBFG argues that Counterclaim IV must be dismissed because MBFG neither misrepresented nor omitted facts from the claims it submitted to Euler on the Nature's Own Policy in March, 2012. In a related argument, MBFG argues that Counterclaim V must be dismissed because Euler has not alleged all of the elements of fraud. The former argument is unpersuasive, but the latter is partly meritorious.

### A. Counterclaim IV - Rescission

Counterclaim IV seeks rescission of the Nature's Own Policy under California Insurance Code §§ 331, 338 and 359. In summary, these statutes establish that "material misrepresentations or concealment of material facts in an application for insurance entitle an insurer to rescind an insurance policy, even if the misrepresentations are not intentionally made." Douglas v. Fidelity Nat'l Ins. Co., 229 Cal. App. 4th 392, 408 (2014). Indeed, "the Insurance Code provides a 'statutory framework that imposes heavy burdens of disclosure upon both parties to a contract of insurance, and any material misrepresentation or the failure, whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party.'" Nieto v. Blue Shield of Cal. Life & Health Ins. Co., 181 Cal. App. 4th 60, 76 (2010) (quoting Mitchell v. United Nat'l Ins. Co., 127 Cal. App. 4th 457, 468 (2005) (internal quotations omitted)).

MBFB contends that when it submitted claims forms and stated that certain Buyers' invoices were "past due," it did not misrepresent or omit material facts to Euler because "[i]t was a true statement to say that the payments were past due." See Mot., at p. 5:24. In addition, MBFG believes its statements on the claim forms could not have been a misrepresentation or concealment as to Euler because Euler had already learned of Nature's Own's fraud, as evidenced by its cancellation of the credit limits on February 27th and February 29, 2012, and therefore it could not have relied on any statements or omissions made during the claim submission process.

The problem with MBFG's argument is that, as far as the relevant law is concerned, Euler's knowledge of Nature's Own's fraud does not excuse it from any of the obligations imposed on it by the Insurance Code. As the plain language of Insurance Code § 332[3] makes clear, the duty to communicate all facts material to the insurance contract is a mutual one, and MBFG cannot escape this duty as an insured under the Nature's Own Policy - at least on a dismissal motion under Rule 12(b)(6) - by arguing that it made a bare claim for payment with information that, while technically true, is potentially misleading when not communicated along with the additional information it is alleged to have known regarding Nature's Own, its illusory buyers, and its manufactured invoices. The duty to communicate is also a continuing one that endures after a policy is issued and remains in effect. See Lunardi v. Great-West Life Assurance Co., 37 Cal. App. 4th 807, 826 (1995) (holding that the obligation under § 332 to communicate material facts is a continuing duty "based on the duty of good faith and fair dealing imposed on both parties."). To be sure, the "past due" statements made by MBFG on the claim forms could be considered a "material misrepresentation" under the terms of Nature's Own policy as alleged by Euler, since the invoices upon which they are based do not represent actual Shipments of Covered Products, and MBFG is alleged to have known that fact. See Cal. Ins. Code § 358 ("A

---

[3] "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code § 332.

7
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS

representation is false when the facts fail to correspond with its assertions or stipulations."). Moreover, based on the counterclaim's allegations, MBFG's failure to inform Euler of the information it may have known about Nature's Own at the time it submitted the claim forms could constitute concealment. See Cal. Ins. Code § 330 ("Neglect to communicate that which a party knows, and ought to communicate, is concealment.").

Nor does qualifying language in Insurance Code § 332 assist MBFG in its argument for this motion. Although that statute suggests that the duty to communicate facts applies only to those "which the other has not the means of ascertaining," it nonetheless "does not require the insurer to take all possible measures to reveal undisclosed conditions." Lunardi, 37 Cal. App. 4th at 826. Furthermore, to the extent it is proper to consider the document at this time, Euler's rescission letter dated March 6, 2012, does not reveal exactly what Euler knew about Nature's Own and its Buyers when it cancelled Credit Limits on suspicious buyers. Thus, it cannot be said, without considering more evidence, that Euler had all of the same information as MBFG when it submitted the claims under the Policy. Such information would need to be known for MBFG's argument to prevail.

Since it could potentially sanction an array of potentially fraudulent conduct, and since the facts known to Euler in March, 2012, cannot be determined on a motion to dismiss, MBFG's argument is rejected. Its motion to dismissed Counterclaim IV will be denied.

### B. Counterclaim V - Fraud and Deceit

Counterclaim V asserts fraud and deceit against MBFG under California Civil Code §§ 1709 and 1572. It is well established in California that "[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996).

Similar to its argument against Counterclaim IV, MBFG basically contends that Euler is

legally prohibited from maintaining a claim for fraudulent concealment against MBFG if it knew facts sufficient to put Euler on inquiry notice of the problems with Nature's Own. See Mesmer v. White, 121 Cal. App. 2d 665, 673 (1953). But as has been explained, the extent of Euler's knowledge at the time MBFG submitted the claims is a factual question that cannot be resolved on a motion to dismiss, and the facts provided by Euler for this counterclaim are sufficient to allege misrepresentation or concealment. The court also finds that Euler has adequately pled knowledge of falsity and intent to defraud since those elements do not require the same level of specificity as others. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

This leaves justifiable reliance and resulting damage. As to those elements, MBFG argues that Euler's allegations do not meet the heightened pleading standard required by Rule 9(b). The court agrees that these two elements are insufficiently pled. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." Alliance Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995). Here, Euler does not identify with specificity how its legal relations were altered by the fraudulent conduct attributed to MBFG; specifically how it relied on MBFG's policy claims and alleged concealments of material fact when, in the end, it did not make a payment to MBFG under the Nature's Own Policy. Indeed, there are few allegations that describe Euler's reliance, and none of those describe the element with requisite specificity.

On the issue of damages, "[a] 'complete causal relationship' between the fraud or deceit and the plaintiff's damages is required." Williams v. Wraxall, 33 Cal. App. 4th 120, 132 (citing Garcia v. Super. Ct., 50 Cal. 3d 728, 737 (1990)). Even at the pleading stage, "the complaint 'must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated.'" Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 202 (2003) (quoting

1  Zumbrun v. Univ. of Southern California, 25 Cal. App. 3d 1, 12 (1972)).  Much like the

2  deficiencies in the reliance allegations, Euler's description of damages does not "connect the dots"

3  between MBFG's conduct in submitting the policy claims and any species of general or special

4  damages.  In other words, if it is true, as Euler contends, that it became suffered damages by

5  becoming "ensnared in this litigation" because of MBFG's claims, then Rule 9(b) requires it to

6  plead the cause and effect relationship between those two events.

7  Accordingly, Counterclaim V will be dismissed with leave to amend.

## IV.  ORDER

Based on the foregoing, MBFG's Motion to Dismiss (Docket Item No. 182) is GRANTED IN PART and DENIED IN PART.  The motion is granted as Counterclaim V, which is DISMISSED WITH LEAVE TO AMEND.  The motion is denied as to all other requests for relief.

Any amended Answer and Counterclaims in response to this order must be filed on or before **March 17, 2015.**

**IT IS SO ORDERED.**

Dated: March 2, 2015

EDWARD J. DAVILA
United States District Judge

10
Case No.: 5:12-cv-02729-EJD
ORDER GRANTING AND PART AND DENYING IN PART PLAINTFF'S MOTION TO DISMISS