Vincent P. Hurley #111215
Amanda Cohen #243946
Ryan Thompson #292281
LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation
28 Seascape Village
Aptos, California 95003
Telephone: (831) 661-4800
Facsimile: (831) 661-4804

Attorneys for Plaintiff/Counter-Defendant
MARBLE BRIDGE FUNDING GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARBLE BRIDGE FUNDING GROUP, INC.,<br><br>Plaintiff,<br>vs.<br><br>EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY,<br><br>Defendant. | Case No. CV12-02729-EJD<br><br>Related to Case Nos. CV12-01839-EJD and CV15-00177-EJD<br><br>PLAINTIFF/COUNTER-DEFENDANT MARBLE BRIDGE FUNDING GROUP, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| AND RELATED COUNTERCLAIMS | Date: July 2, 2015<br>Time: 9:00 a.m.<br>Courtroom 4, Fifth Floor<br>Honorable District Court Judge Edward J. Davila |

# TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 3

I. INTRODUCTION .......... 3

II. PROCEDURAL HISTORY .......... 4

III. ARGUMENT .......... 4

A. Summary Judgment Standard .......... 4

B. Summary Judgment Should be Granted in Favor of Marble Bridge as to Euler's Counterclaim IV for Rescission .......... 5

1. In Filing its March 7, 2012 Claims with Euler, Marble Bridge Did Not Make any Material Misrepresentations or Omissions and Complied With Euler's Instructions for Filing a Claim .......... 6

2. In Filing its March 7, 2012 Claims with Euler, Marble Bridge Did Not Possess the Fraudulent Intent to Deceive Euler .......... 9

3. At The Time Marble Bridge Filed its Claims with Euler on March 7, 2012, Euler Already Possessed Extensive Knowledge of the Nature's Own Fraud, and thus Euler Could Not and Did Not Reasonably Rely on Marble Bridge's Claims .......... 9

C. Summary Judgment Should be Granted in Favor of Marble Bridge as to Euler's Counterclaim V for Fraud and Deceit .......... 15

(a) Misrepresentation. .......... 15

(b) Knowledge of the falsity. .......... 17

(c) Intent to defraud. .......... 18

(d) Justifiable Reliance. .......... 19

(e) Damages. .......... 20

IV. CONCLUSION .......... 22

# TABLE OF AUTHORITIES


*Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226 (1995) .................................. 18, 20, 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 4, 5

*Cummings v. Fire Ins. Exchange*, 202 Cal. App. 3d 1407 (1988) ...................... 5, 6, 9, 10, 15

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528 (9th Cir. 2000) ................................. 4

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* 156 Cal. App. 4th 1259 (2007) ... 6, 9

*Lovejoy v. AT&T Corp.*, 92 Cal.App. 4th 85 (2001) ............................................................ 18

*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 5

*Mesmer v. White*, 121 Cal.App.2d 665 (1953) ........................................................ 15, 19, 20

*Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993) ...................................................................... 19

*Small v Fritz*, 30 Cal.4th 167 (2003) ........................................................................ 15, 20, 21

California Insurance Code sections 331, 338 and 359 ...................................................... 5, 7

Federal Rule of Civil Procedure 56 ................................................................................. 4, 5, 22

California Civil Code section 1644 ......................................................................................... 7

## NOTICE OF MOTION AND MOTION

TO DEFENDANT/COUNTERCLAIMANT AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on July 2, 2015, at 9:00 a.m., before the Honorable Judge Edward J. Davila, at the United States District Court, Northern District of California, 280 South First Street, Courtroom 4, Fifth Floor, San Jose, California, Counter-Defendant MARBLE BRIDGE FUNDING GROUP, INC. will move the Court under Federal Rule of Procedure 56 for an order that summary judgment, or alternatively that partial summary judgment, be entered in favor of Counter-Defendant and against Counterclaimant for the following reason:

Summary judgment should be granted in favor of Counter-Defendant Marble Bridge Funding Group, Inc. (hereafter MBFG) on the Counterclaim of Defendant/Counterclaimant Euler Hermes (hereafter Euler) because there is no material disputed fact that should be decided by a jury.

Summary judgment should be granted in favor of Counter-Defendant MBFG on Euler's Counterclaim IV because there is no material disputed fact that should be decided by a jury whether Euler is entitled to rescission, as the undisputed facts demonstrate that Marble Bridge did not make any material misrepresentations or omissions in filing its claim, Marble Bridge did not possess the fraudulent intent to deceive Euler in filing its claim, and at the time Marble Bridge filed its claim with Euler, Euler already possessed extensive knowledge of the Nature's Own fraud, and therefore could not and did not reasonably rely on Marble Bridge's claim.

Summary judgment should be granted in favor of Counter-Defendant MBFG on Euler's Counterclaim V because there is no material disputed fact that should be decided by a jury whether Marble Bridge defrauded Euler, as the undisputed facts demonstrate that in filing its claim with Euler, Marble Bridge made no misrepresentations, Marble Bridge had no knowledge of any alleged falsity regarding the claim, Marble Bridge possessed no intent to defraud Euler, Euler did not reasonably rely on Marble Bridge's claim, and Euler suffered no resulting damages as a result of Marble Bridge's claim.

This motion will be based on this notice, the memorandum of points and authorities, separate statement of undisputed material facts, declarations and exhibits submitted herewith, and on the oral argument of counsel at the time of the hearing.

Dated: May 26, 2015

LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation

By: /v/ Vincent P. Hurley
VINCENT P. HURLEY
Attorneys for Plaintiff/Counter-Defendant
MARBLE BRIDGE FUNDING GROUP, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

From 2008 through August 2012, a woman named Kay Holloway, aka Marsha Holloway, aka Anette (with one "n") Zimmerman ("hereinafter referred to as "Holloway" or "Zimmerman"), and others named Greg Winters and Karl Stehlin, operated a corrupt criminal enterprise using the fraudulent company known as Nature's Own and a number of other fake companies for the purpose of defrauding small business finance companies.[1] Defendant/Counterclaimant EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY ("Euler") was intimately involved and helped facilitate the fraud on various factors, by, at the very least, intentionally ignoring the frauds and not telling the beneficiaries on the Euler insurance policies, including Plaintiff MARBLE BRIDGE FUNDING GROUP, INC., ("MBFG" or "Marble Bridge"). Euler has counterclaimed against Marble Bridge alleging that Euler knew nothing and Marble Bridge made misrepresentations and tried to defraud Euler. The undisputed facts show that Euler was fully aware of the frauds against lender/beneficiaries on Euler policies in Florida and California, refused to warn or inform the victims, attempted to rescind the policy by paying people that Euler knew were criminals, and withheld critical information from Marble Bridge before MBFG filed the insurance claims about which Euler complains.

Plaintiff/Counterclaim Defendant Marble Bridge Funding Group is a small business lender that provides accounts receivable financing, purchase order/contract financing, and in some cases, short term venture loans. Accounts receivable financing is frequently referred to in credit as "factoring" invoices. Small business lenders "factor invoices," giving growing small businesses this form of alternate financing to avoid incurring long term debt or giving up too much equity. Such small business financing allows small businesses that cannot obtain or do not

[1] Holloway and Winters were arrested and sentenced to prison for a fraud on another small business lender using a Euler insurance policy, and Stehlin is under indictment for victimizing another similar company with a Euler policy.

want bank financing to increase their cash flow by selling their receivables. As discussed below, such transactions are the best solution for a rapidly growing company like Nature's Own, if Nature's Own had actually been a company.

Marble Bridge filed insurance claims on Euler's insurance policy that are the subject of Euler's counterclaim after Euler stonewalled and withheld information from Marble Bridge, and after Marble Birdge communicated with its attorney and the FBI.

## II.

## PROCEDURAL HISTORY

The original complaint in this matter was filed on May 29, 2012, (Docket No. 1) and a First Amended Complaint was filed on September 12, 2014 (Docket No. 176). Euler filed its answer and counterclaim on September 15, 2014 (Docket No. 177). On March 2, 2015, the Court granted in part and denied in part Marble Bridge's motion to dismiss Euler's counterclaim (Docket No. 207), dismissing counterclaim V (fraud) with leave to amend, and denying the motion to dismiss counterclaim IV (misrepresentation).

On March 17, 2015, Euler filed an amended counterclaim alleging the same five counts as in its original counterclaim (Docket No. 208), and MBFG answered on March 31, 2014 (Docket No. 210). Marble Bridge files this motion for summary judgment in favor of Marble Bridge as to Counts IV and V of Euler's amended counterclaim.

## III.

## ARGUMENT

### A. Summary Judgment Standard.

Summary judgment is proper if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party has the burden of proof at trial, but need only point out to the Court through argument and absence of

evidence to support the non-moving party's case. *Id.* at 325; *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

The burden then shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Partial summary judgment, which amounts to summary adjudication of issues and facts, is proper even if grounds for summary judgment on all causes of action are not established, and the Court may make an order specifying which facts are deemed to be without substantial controversy. Fed. R. Civ. P. 56(d).

**B. <u>Summary Judgment Should be Granted in Favor of Marble Bridge as to Euler's Counterclaim IV for Rescission.</u>**

Euler seeks rescission under California Insurance Code sections 331, 338 and 359. Euler misinterprets allegations of "misrepresentation" in contracting versus "misrepresentation" in an insurance claim.

Cal. Ins. Code section 331[2] provides: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Section 338 provides: "An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind." Section 359 provides: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

The insured's intentional concealment or misstatement of "material" facts in a *claim for policy benefits* (as distinguished from an application for insurance) entitles the insurer to void the

---

[2] Code references in this Part are to the California Insurance Code

insurance contract. *Cummings v. Fire Ins. Exchange*, 202 Cal. App. 3d 1407, 1418-19 (1988). A misrepresentation in a claim for policy benefits is material if it concerns a subject reasonably relevant to the insurer's investigation, and if a reasonable insurer would attach importance to the fact misrepresented. *Id.* at 1417. An objective test, that of a reasonable insurer, is utilized where the insurer seeks to rescind because of fraudulent statements in a claim for policy benefits. *Id.* at 14. Materiality can be decided as a matter of law if reasonable minds could not disagree on the materiality of the misrepresentation. *Id.* at 1423, fn 7.

Unlike rescission for misrepresentations in an insurance *application*, rescission for *false claims* requires a fraudulent intent. *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1270 (2007); *Cummings*, 202 Cal. App. 3d at 1414-1415; fn 7, and at 1416.

**1. In Filing its March 7, 2012 Claims with Euler, Marble Bridge Did Not Make any Material Misrepresentations or Omissions and Complied With Euler's Instructions for Filing a Claim.**

Euler provided credit insurance, insuring the buyers on the Nature's Own insurance policy to which MBFG was a beneficiary. **Fact No. 1**. The policy was renewed by Euler on October 27, 2011. **Fact No. 2**. In January 2012, Euler increased or maintained credit limits on several Nature's Own buyers. **Fact No. 5**. Beginning in January 2012, people in Marble Bridge were suspicious of the buyers on the Nature's Own policy. **Fact No. 4**. The buyers on the Nature's Own policy made payments on the financed invoices in January/February 2012. **Fact No. 6**. Marble Bridge's concerns about the buyers were partially mitigated by Euler's action in granting substantial credit limit increases and the fact that some buyers continued to pay on the invoices purchased by MBFG. **Fact No. 7**.

On February 27, 2012, Euler canceled credit limits on some of the Nature's Own buyers that owed money to Marble Bridge. **Fact No. 8**. MBFG president Paul Candau and MBFG staff tried to obtain information from Euler about the cancellations, but Euler did not provide any information. **Fact No. 10**. Euler officials told Euler agents and employees not to talk to Marble Bridge. **Fact No. 12**. After the credit limits were canceled by Euler, and buyer Rancho Linda

paid $15,000 on the same day, no more payments were made to MBFG by the buyers. **Facts Nos. 9, 11**. On March 6, 2012, Euler sent a letter to Nature's Own offering to repay all premiums in exchange for Nature's Own agreeing that the policy was rescinded from inception. **Fact No. 16**.

When Marble Bridge received the letter offering to rescind, and when no one at Euler would communicate with Marble Bridge, Marble Bridge submitted insurance claims on March 7, 2012 for buyer payments that were past due. **Facts Nos. 17, 22, 23**. The only option for Marble Bridge to preserve its rights as a beneficiary under the Euler/Nature's Own Policy was to file a claim using Euler's on-line system pursuant to the Euler policy, which Marble Bridge did once the amounts owed were past due. **Facts Nos. 17, 18, 19, 20, 21, 27**.

Each of the Marble Bridge claims say the same words: "Non-payment reason – past due". **Fact No. 19**. As required by Euler, Marble Bridge submitted the aging report, invoices and bills of lading for the past due payments. **Fact No. 21**.

There was no misrepresentation by Marble Bridge. There were two words – "past due", along with the past due invoices and documentation. **Facts Nos. 19, 21**. MBFG followed up the claims by a letter on March 8, 2012, from Marble Bridge attorneys to Euler Vice president Paul Haigley objecting to the rescission of the policies and reiterating that MBFG was filing claims in the face of the attempt to rescind. **Fact No. 29**. The letter stated in pertinent part,

> "Marble Bridge Funding Group expressly relied upon the existence of the Policy and in particular, the expressly represented due diligence undertaken by Euler Hermes prior to issuance of the Policy in order to establish the credit limits for the various NOP [Nature's Own Pharmaceuticals] account debtors prior to MBFG accepting NOP as a client and advancing substantial funds. As a result, we strongly object to your offer of rescission dated March 6, 2011 [sic] regarding the policy. Furthermore, in that MBFG has filed substantial claims under the Policy (summaries of which are attached hereto for your reference), any attempt to rescind the Policy at this time by Euler Hermes would be prejudicial and expressly actionable." **Fact No. 29**.

Words are to be understood "in their ordinary and popular sense…". Cal. Civil Code §1644. A representation is false when the facts fail to correspond with its assertions. Cal. Ins. Code §358. The facts submitted by Marble Bridge do correspond with the assertions in the

computerized claim form provided by Euler and submitted by Marble Bridge. The payments were past due and the claim said the payments were past due. **Facts Nos. 18, 19.**

The letter from Marble Bridge's attorneys establishes that Marble Bridge submitted claims involving Euler's unexplained and surprise cancellation of credit limits after Euler had represented that it had performed due diligence prior to issuing the Nature's Own policy, and Euler was trying to rescind the policy and return all premiums to the criminals operating Nature's Own, thereby foreclosing any potential rights of Marble Bridge. Euler Vice President Haigley immediately gave Marble Bridge's attorneys' March 8, 2012 letter to Euler's legal department. **Fact No. 30**.

Prior to MBFG filing its claims, Euler Associate General Counsel Deborah Steurhmann and Euler knew that Nature's Own and its purported buyers were the subjects of a criminal investigation, and that criminal investigation was linked to another fraud in Florida about which Euler had been aware since at least September 2011. **Facts Nos. 15, 31, 32, 35, 36, 37, 38, 57, 58, 59, 60, 62, 63, 64, 65, 66, 67.** In February 2012, before MBFG submitted its claims, Steurhmann directed that no one in Euler talk to Marble Bridge and to refer any questions about cancellations to herself. **Facts Nos. 12, 13.**

Marble Bridge did not make any material misrepresentations or omissions and complied with Euler's instructions for filing a claim. Concurrently, MBFG attorneys wrote to Euler. **Fact No. 29**. All the while, Euler was stonewalling Marble Bridge about Euler's knowledge of the fraud, and was preparing for litigation. **Facts Nos. 10, 12, 14, 15, 31, 62, 66, 67.** The MBFG claims were true, and to the extent there was a confirmation that Nature's Own and its buyers were criminals, Euler knew that better than anyone. Euler was simply trying to foreclose Marble Bridge from any rights by sending the premium money to the criminals that it knew were in a criminal enterprise, while MBFG was trying to assert rights.

Accordingly, Marble Bridge's motion for summary judgment as to Counterclaim No. IV alleging misrepresentation should be granted.

**2. In Filing its March 7, 2012 Claims with Euler, Marble Bridge Did Not Possess the Fraudulent Intent to Deceive Euler.**

Unlike rescission for misrepresentations in an insurance *application*, rescission for *false claims* requires a fraudulent intent. *LA Sound USA, Inc.*, 156 Cal. App. 4th at 1270; *Cummings*, 202 Cal. App. 3d at 1414-1415; fn 7.

The undisputed facts establish that Marble Bridge did not possess the intent to defraud Euler. Between February 27, 2012, when the credit limits on the buyers were cancelled, and March 7, 2012, when the insurance claims were submitted, Euler failed to communicate with Marble Bridge, and Euler sent a letter to Nature's Own, offering to rescind the policy, leading Marble Bridge to file the claims. **Facts Nos. 8, 10, 12, 16, 17, 22, 23.** Because Euler would not communicate with Marble Bridge, Mr. Candau believed that either Euler was committing fraud, or the buyers were legitimate and Euler was trying to avoid payment of the insurance coverage. **Fact No. 10, 24**.

Marble Bridge, at Mr. Candau's direction, filed its claims to protect its interests as a beneficiary under the policy, not with any alleged intent to defraud or deceive Euler. **Facts Nos. 25, 26.** At the time Marble Bridge filed its claims, Marble Bridge had contacted the FBI. **Fact No. 4**. The day before submitting the claims, MBFG president Paul Candau notified MBFG attorneys and the FBI that MBFG was submitting the claims in part because it was suspected that Euler was trying to rescind to avoid paying legitmate claims. **Fact No. 28**. One does not report its suspicions to the FBI about an insurance company and the insureds on an insurance policy while simultaneously trying to defraud the insurance company. Euler's claim for rescission necessarily fails, as Marble Bridge did not possess the intent to defraud Euler, and, therefore, summary judgment should be entered in favor of Marble Bridge on Counterclaim No. IV.

**3. At The Time Marble Bridge Filed its Claims with Euler on March 7, 2012, Euler already Possessed Extensive Knowledge of the Nature's Own Fraud, and thus Euler Could Not and Did Not Reasonably Rely on Marble Bridge's Claims.**

A misrepresentation in a claim for policy benefits is material if it concerns a subject

reasonably relevant to the insurer's investigation, and if a reasonable insurer would attach importance to the fact misrepresented. *Cummings*, 202 Cal. App. 3d at 1417. Here, Marble Bridge's alleged misrepresentations/omissions regarding the Nature's Own fraud were not reasonably relevant or important to Euler's investigation of Marble Bridge's claims, as Euler already possessed extensive, intimate knowledge of the Nature's Own fraud. Therefore, Euler could not rely on information about which it already knew.

**2009**

On September 30, 2009, Euler Sales Vice President John Steel, who was responsible for selling policies insuring two companies calling themselves JK Express and Bella Express, wrote:

> *"Both policies [JK Express Transport Inc. and Bella Express] were cancelled due to Policyholder fraud. Kevin McCann [General Counsel of Euler] ordered removal. They are screwing the factor".* [emphasis added]. **Fact No. 42**.

In November 2009, Euler Assistant Vice President and Associate General Counsel, Deborah Stuehrmann, acknowledged that the JK Express invoices were fraudulent and that the fraud was not isolated and included at least one other insurance policy. **Fact No. 43**.

**2010**

In April 2010, Vice President Steel communicated with a finance company called LSQ that was interested in purchasing invoices from a company operated by Holloway and the companies now known to be associated with the criminal enterprise. **Fact No. 44**. On April 6, 2010, Roger Allen of LSQ sent a 2007 newspaper article to Steel that carried the headline: *"Swindler Sentenced. Holloway gets 1 year in jail for $400,000 fraud."* **Fact No. 45**. The article provided that Holloway was a convicted felon who was previously jailed for an organized criminal fraud in which Holloway utilized International Air Cargo as one of her fraudulent companies. **Facts Nos. 45, 46**. International Air Cargo was a fraudulent buyer on the Euler-Nature's Own policy one year later when MBFG was swindled by the same criminal scheme involving a Euler insurance policy. **Fact No. 3**.

In May 2010, Euler received a $500,000.00 claim from Factor King, another financing company and beneficiary on a Euler insurance policy that had purchased invoices of a Euler-

insured fake company, U.S. Hay Direct. **Fact No. 39**. The fake buyers of U.S. Hay Direct included Nature's Own, Barbed Wire Cattle, Rancho Linda Marchadores, Iberian Horse Association, International Air Cargo, Phantom Sport Horses, and Monde Group. **Fact No. 64**. When the criminals stopped paying, Factor King submitted its claim with the invoices to Euler. **Fact No. 39**. Despite the Factor King claim, Euler continued to insure and "do business" with Nature's Own in Nature's Own's capacity as both an insured *and* as a buyer on various policies. **Facts Nos. 1, 2, 33, 40, 41, 54**. The same buyer companies as the Factor King fraud were used in the fraud on Marble Bridge. **Facts Nos. 58, 59, 62, 63, 64**.

On June 28-29, 2010, when dealing with Holloway, Euler accounts manager Steven Redmer wrote: "*I'm bowing out of this whole mess*" and *"This smells like fraud to me, …."* **Fact No. 48.**

On July 8, 2010, after being alerted by Factor King, Euler Account Manager Janny Fleitas informed Vice President and Head of Commercial Underwriting Paul Haigley and Steven Redmer that one of the buyers listed for U.S. Hay did not have a physical address and no one answered the phone number listed in Euler's Dun & Bradstreet report, there were lawsuits against the buyers, and the buyers were on other Euler policies. **Fact No. 49**. Euler knew that the buyers listed for the Euler-U.S. Hay Direct policy included Rancho Linda Marchadores, Iberian Horse, and Phantom Sport Horse, which were all also Nature's Own buyers in the fraud on MBFG . **Fact No. 59**.

On July 13, 2010, Euler's VP Haigley wrote back to Fleitas: *"If you think there is fraud involved or think the policy should not be in place because it may be 'bad business' then lets talk about ending the relationship ASAP"*, and to otherwise cancel for nonpayment if possible, or keep an eye on them. **Fact No. 50**. Euler's Steven Redmer commented on the Fleitas information*: "Shady!!!"* **Fact No. 51**. Euler employees knew that factors were being defrauded using the Euler policies when the criminals would *"need to get money again from some unlucky facto*r." **Fact No. 52**.

On October 8, 2010, when Vice President Haigley was notified by Euler employee Fleitas about suspicious activity of U.S. Hay Direct, LLC, Polished Advertising and U.S. Equine, Haigley told Fleitas: *"Let's lapse and run away. . . ."* which meant, not renew the policy. **Fact No. 53**.

Approximately eighteen months later, after the fraud was completed on Marble Bridge in February 2012, Haigley signed various letters to the criminals offering them premium refunds in return for their cooperation to rescind the policies. **Fact No. 16**.

**2011**

On May 10, 2011, Euler received a claim in excess of $300,000 from Gulf Coast Business Credit ("Gulf Coast"), which had just been defrauded on a Euler policy insuring Equipack. **Fact No. 54**. Equipack had been a frequently listed fake *buyer* on other Euler policies, including the Euler-Nature's Own policy written on November 1, 2010, and renewed in October 2011. **Facts Nos. 2, 3, 60, 64**. Three of the four defaulting Euler-Equipack buyers had also simultaneously defaulted on the Euler-U.S. Hay policy related to the fraud on Factor King discussed above for which Euler was sued. **Facts No. 33, 40**. On the US Hay and Equipack policies, Nature's Own was one of those repeat defaulting buyers, as was Rancho Linda, and Barbed Wire Cattle. **Facts Nos. 33, 40.**

In May 2011, Euler received claims under the Euler-Equipack policy, identifying Greg Winters as the contact person for Equipack (**Fact No. 55**) and Anette Zimmerman as the contact person for Nature's Own. **Fact No. 56**. In September 2011, Florida State Attorney General Phil Hanson called Euler Assistant General Counsel Deborah Stuehrmann and informed Stuehrmann that the Florida State Attorney General was conducting a criminal investigation related to U.S. Hay Direct, Equipack, Holloway, and Winters. **Fact No. 57**.

Thus, when Euler was told by law enforcement that Winters, Equipack and US Hay were the subjects of a criminal investigation, Euler knew by the claims in its system and the Florida Attorney General information that Nature's Own was connected to the previous fraud on Factor

King, and "Anette Zimmerman" was the person operating Nature's Own. **Facts Nos. 39, 40, 54, 56, 57, 58, 59.**

The individuals and entities revealed by Hanson were known by Euler to be participants in the Factor King fraud, and Euler had already been sued by Factor King (**Fact No. 58**) and had a claim regarding the same insureds and buyers from Gulf Coast Commercial. **Facts Nos. 40, 54**. Euler knew that the buyers listed for the Euler-U.S. Hay policy included Rancho Linda Marchadores, Iberian Horse, and Phantom Sport Horse, which were all also listed as Nature's Own buyers. **Fact No. 59**. Euler knew that Equipack LLC was also a Nature's Own Buyer. **Fact No. 60**. Winters was also the controlling name on Equipack, a Nature's Own Buyer. **Facts Nos. 55, 60**.

Despite Euler's extensive knowledge regarding the Florida fraud involving US Hay and Equipack for which Euler had already been sued by Factor King, and Euler's knowledge of the connection of Anette Zimmerman to Nature's Own, Equipack and Greg Winters, and Euler's knowledge from the information provided by the Florida State Attorney in September 2011, Euler did not notify Marble Bridge as the beneficiary of the Euler-Nature's Own policy regarding the criminal investigation. **Fact No. 61**.

Notwithstanding that Euler knew, via the 2007 newspaper article, that International Air Cargo was a fraudulent company, coupled with Euler's knowledge via the Hanson phone call in September 2011 that Equipack were under criminal investigation, Euler continued to maintain and/or approve credit limits for International Air Cargo and Equipack. **Facts Nos. 3, 34, 44, 46, 47, 57**.

On October 27, 2011, despite the criminal investigation, Euler issued renewal credit insurance Policy No. 5041669 to Nature's Own, Inc., covering a policy period from November 1, 2011 through October 31, 2012 ("Second Policy"). **Fact No. 2**.

In addition to what they previously knew, Euler Assistant General Counsel Stuehrmann and Euler suspected there was fraud and/or improper conduct by Nature's Own and the Nature's Own buyers as early as February 9, 2012, when Euler received a high risk alert on International

Air Cargo. **Fact No. 62**. On February 12, 2012, Stuehrmann called Florida Attorney General Hanson because of the high risk alerts on some buyers and because Stuehrmann's review of Euler files indicated there were more buyers involved, including Apothecary, Equipack, Florida Beef, International Air Cargo, and others (all connected to the Nature's Own policy used to defraud MBFG). **Fact No. 64**. Hanson confirmed to Stuehrmann that the companies Stuehrmann identified were considered suspicious and were under investigation. **Fact No. 65**. Stuerhrmann and Euler were aware of the fraud when Euler cancelled the credit limits beginning on February 27, 2012, before Marble Bridge filed its claims. **Fact No. 66**.

Not only did Euler know about the fraud by Nature's Own and its buyers before the Marble Bridge insurance claims, Euler instructed its agents to remain silent and not tell anyone. **Facts Nos. 12, 66**. Leonard Freeman was a Euler sales agent in Florida who, on February 27, 2012, received notice of the same credit limit cancellations of buyers as were received for the Nature's Own buyers used to defraud Marble Bridge. **Fact No. 14**. Freeman was ordered in February 2012 to not tell the insureds and beneficiaries about the fraud. **Fact No. 14**. Stuehrmann has admitted that she put out an order that all inquiries about the credit limit cancellations or Marble Bridge must be referred to Stuehrmann. **Facts Nos. 13, 68**. Stuehrmann gave that order in February 2012 because she anticipated that Marble Bridge was going to sue Euler. **Fact No. 69**.

Euler could not and did not attach any merit or importance to the claims of MBFG. MBFG was submitting that the claims were past due, while Euler knew that the companies "past due" were criminals and subject to a criminal investigation. **Facts Nos. 19, 31, 32, 33, 35, 36, 37, 38, 40, 44, 45, 46, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65, 66, 67.** The Claims were immediately sent to Euler attorneys who were already in litigation with another victim of the criminals, and who were preparing for litigation from Marble Bridge. **Facts Nos. 39, 69.** As Euler admitted in its complaint, Paragraph 49, Euler knew about the frauds by Nature's Own.

Marble Bridge's alleged "misrepresentations" in its claims was not "material," as Euler's intimate knowledge of the Nature's Own fraud rendered such "misrepresentations" immaterial to any supposed investigation into Marble Bridge's claims. *Cummings*, 202 Cal.App. at 1417. Therefore, summary judgment should be entered in favor of Marble Bridge on Euler's Counterclaim No. IV.

**C. <u>Summary Judgment Should be Granted in Favor of Marble Bridge as to Euler's Counterclaim V for Fraud and Deceit.</u>**

Counterclaim Count V alleges Fraud and Deceit against Marble Bridge under California Civil Code sections 1709 and 1710 for Marble Bridge's *failure to communicate* material facts related to the invoices and bills of lading that were submitted as part of Marble Bridge's March 7, 2012 claim to Euler Hermes. See Counterclaim ¶¶92-97.

The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Small v Fritz*, 30 Cal.4th 167, 173 (2003). A party may not claim fraudulent concealment if the party had notice of facts sufficient to put a prudent person upon inquiry and if so, whether an inquiry, reasonably conducted, would have disclosed to him the true state of affairs. *Mesmer v. White*, 121 Cal.App.2d 665, 673 (1953).

**(a) Misrepresentation.**

Section 1710 of the California Civil Code provides that: "A deceit . . . is either: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, (4) A promise, made without any intention of performing it."

Euler alleges that the "misrepresentation" Euler relied on was as follows: . . . "the invoices and bills of lading were what they appeared to be on their face, and the absence (by

omission) of the information known to Marble Bridge that the invoices and bills of lading were fraudulent" (Counterclaim ¶98), and ". . . Marble Bridge suggested as facts that the invoices and bills of lading that it submitted in support of its claim were genuine and represented actual shipments of covered products . . .". Counterclaim ¶103; see also ¶¶104-105; 107-109.

On March 7, 2012, Marble Bridge submitted its claims to Euler. **Fact No. 84**. The plain words of the statement on the claims were true, not a misrepresentation. There were two words – "past due". **Fact No. 88**. The payments were past due and the claim said the payments were past due. **Fact No. 88**. Nothing more, nothing less. Marble Bridge President Paul Candau had no intent to defraud Euler. **Fact No. 91**. Marble Bridge attorneys wrote to Euler a day after submission of the claims stating that the claims were filed in conjunction with Marble Bridge's objection to Euler trying to rescind the policy and return money to the criminals. **Fact No. 93**.

When Euler received the claims and the letter from Marble Bridge, Euler already knew about the criminal investigation of companies related to Marble Bridge, (**Facts Nos. 95, 96, 99, 100, 101, 102, 109, 110, 115, 116**), knew about the connection of Anette Zimmerman (**Facts Nos. 72, 108, 112**), and knew that Nature's Own and every company on the Nature's Own policy was being investigated by the Florida Attorney General. **Facts Nos. 95, 96, 99, 100, 101, 102, 109, 110, 115, 116.** For several weeks before the claim, Steurhmann knew that Nature's Own and all the buyers on the Nature's Own policy were being investigated (**Facts Nos. 95, 96, 99, 100, 101, 102, 109, 110, 115, 116)** and the criminal enterprise was connected to other frauds in Florida. **Facts Nos. 110, 111, 114, 120**.

People in Marble Bridge had grown suspicious in January to February 2012 of the buyers on the Nature's Own policy (**Fact No. 74**), but, when Marble Bridge withheld funds in its reserve account for Nature's Own, within days Euler raised the credit limits and maintained all credit limits on the Nature's Own buyers, representing that Euler's due diligence established that the buyers were creditworthy. **Fact No. 75**. Marble Bridge then received payments in January and February from some buyers. **Fact No. 76**. Euler underwrote an insurance policy (**Facts Nos. 70, 71**), awarded increased credit limits (**Fact No. 75**), and then stood by while Marble

Bridge was defrauded until the cancellation of credit limits on February 27, 2012, (**Fact No. 73**) and the rescission and offer to pay the criminals on March 6, 2012. **Fact No. 80**. As far as MBFG could conclude, because Euler would not communicate with Marble Bridge, either Euler was committing fraud, or the buyers were legitimate and Euler was trying to avoid payment of the insurance coverage. **Fact No. 87**. As stated in the letter from MBFG attorneys, Marble Bridge made its claims to protect its interests under the policy, because Euler failed to communicate with Paul Candau or anyone at Marble Bridge. **Facts Nos. 77, 78, 92, 93**.

The March 8, 2012 letter sent from Marble Bridge's attorneys to Euler establishes that Marble Bridge clearly told Euler why it was making the claims – because Euler was attempting to rescind the policy, thereby foreclosing any potential rights of Marble Bridge. There was no misrepresentation. Euler knew exactly what was going on and was simply trying to foreclose Marble Bridge from any claim rights and prepare for litigation against Marble Bridge. **Facts Nos. 95, 96, 97, 98, 99, 100, 101, 102, 103, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 120, 121**.

Euler has failed to satisfy the "misrepresentation" element of its fraud and deceit claim. Accordingly, Marble Bridge's motion for summary judgment as to Count V should be granted.

**(b) Knowledge of the falsity.**

Euler claims that Marble Bridge failed to disclose that it had investigated and had received reports that could not verify the actual existence of product, businesses or places where product could have been shipped, and that Marble Bridge had contacted the FBI. Counterclaim ¶71. The allegations that Marble Bridge failed to disclose information related to the existence of Euler insured fake companies simply does not constitute fraud. There was nothing false for which to have knowledge. The claims said "past due" and were past due. **Fact No. 88**. The aging report showed that they were past due, as did the invoices and bills. **Facts Nos. 85, 89**. Euler required that all claims for past due payments include supporting documentation within 30 days or Euler could withdraw the claim (**Fact No. 90**), and there was no term in the policy allowing for rescission and return of premiums aleady paid. **Fact No. 90**.

Contrary to what MBFG knew, Euler knew about the fraud, (**Facts Nos. 114, 117, 118, 120),** knew that Nature's Own and its buyers were all the subjects of a criminal investigation (**Facts Nos. 95, 96, 99, 100, 101, 102, 109, 110, 115, 116**), and knew that it had already been sued by another factor as a result of the same fraud scheme perpetrated in Florida. **Facts Nos. 103, 104, 105, 110**. Possessing all of that knowledge between September 2011 and February 27, 2012, Euler intentionally withheld the information from Marble Bridge, knowing full well that Marble Bridge had been defrauded using the Euler insurance policy. **Facts Nos. 77, 78, 118, 120**.

Euler has failed to satisfy the "knowledge of the falsity" element of its fraud and deceit claim. Accordingly, Marble Bridge's motion for summary judgment as to Count V should be granted.

**(c) Intent to defraud**.

The intent required to prove fraud is the intent to induce reliance. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001).

As previously set forth, between February 9, 2012, when Euler received the high risk alert on International Air Cargo and then called the Florida Attorney General, and March 7, 2012, when the insurance claims were submitted, Euler refused to communicate with Marble Bridge, and Euler copied Marble Bridge on its letter attempting to rescind the policy and pay money to the criminals. **Facts Nos. 77, 78, 79, 80**. The rescission letter precipitated the Marble Bridge claims to protect its rights. **Fact No 86**.

Marble Bridge received nothing but silence and the rescission letter. **Fact No 81**. Either Euler was party to the fraud, or the buyers were legitimate and Euler was trying to avoid payment of the insurance coverage. **Fact No. 87**.

Marble Bridge filed its claim to protect its interests as a beneficiary under the policy, not with any alleged intent to defraud or deceive Euler. **Facts Nos. 91, 92**. Further, at the time Marble Bridge filed its claims, Marble Bridge had contacted the FBI. **Facts Nos. 74, 82**. One does not report its suspicions to the FBI about an insurance company and the insureds on an

insurance policy while simultaneously trying to defraud the insurance company. Euler's claim for Fraud and Deceit necessarily fails, as Marble Bridge did not possess the intent to defraud Euler, and, therefore, summary judgment should be entered in favor of Marble Bridge on Counterclaim No. V.

**(d) Justifiable Reliance**.

A plaintiff asserting fraud by misrepresentation must establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993).

> "Reliance" on fraudulent misrepresentation or nondisclosure exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239 (1995).

In order to prove reliance via a fraudulent omission, plaintiff must prove that, had the omitted information been disclosed, plaintiff would have been aware of it and behaved differently. *Mirkin*, 5 Cal.4th at 1093. A party may not claim fraudulent concealment if the party had notice of facts sufficient to put a prudent person upon inquiry and if so, whether an inquiry, reasonably conducted, would have disclosed to him the true state of affairs. *Mesmer,* 121 Cal. App. 2d at 673.

Euler alleges in its Amended Counterclaim paragraphs 111-115 that, because of the MBFG insurance claims, Euler did not cancel the Nature's Own insurance policy (for which it had cancelled all credit limits on February 27, 2012 and tried to rescind on March 6, 2012) until June 2012, and it otherwise would have been entitled to rescind the policy and resolve pending claims. Counterclaim ¶¶111-115. [emphasis in original].

But, Euler has admitted in its pleadings and testimony that Euler knew there was suspicious activity and possibly fraud between September 2011 and February 12, 2012, before Euler received the March 7, 2012 claims. **Facts Nos. 95, 96, 99, 100, 101, 102, 109, 110, 115, 116.** Euler's amended counterclaim and testimony establishes that there was no justifiable reliance. Counterclaim ¶49. Further, as previously set forth in the instant motion, Euler had

extensive, intimate knowledge of the Nature's Own fraud and the individuals behind the fraud. **Facts Nos. 95, 96, 97, 98, 99, 100, 101, 102, 103, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 120**.

Here, it is undisputed that (1) Euler plead that it knew about the fraud by the buyers in February 2012 (Counterclaim ¶49), so the fraud and deceit fails because there was no reliance; (2) Euler knew about the fraud by the buyers before the insurance claims were submitted (**Facts Nos. 114, 117, 118, 120**); and (3) the evidence is undisputed that Euler tried to conceal the fraud from Marble Bridge by (a) refusing to communicate with its beneficiary (**Fact No. 77**), and (b) ordering its employees to withhold the truth about the fraud on beneficiaries. **Fact No 78**. Further, Euler fails to allege how it specifically relied on Marble Bridge's policy claims and alleged concealments of material fact, as the claims went immediately to Euler's lawyers (**Fact No. 94**) and Euler did not make a payment to Marble Bridge. **Fact No. 119**.

As in *Mesmer*, where the Court found that the plaintiff had actual knowledge that was not susceptible of concealment, Euler had actual knowledge that Nature's Own and the listed buyers were involved in fraud, and canceled everything. *Mesmer,* 121 Cal. App. 2d at 673. Therefore, as a matter of law, Euler cannot satisfy the "reliance" element of its fraud/deceit claim, and summary judgment should be granted in favor of Marble Bridge as to Euler's Counterclaim Count V.

**(e) Damages.**

In order to state a cause of action for fraud or deceit, plaintiff must show a cause and effect relationship between the misrepresentation and the damages sought. *Small*, 30 Cal.4th 167, 202 (2003). A plaintiff must suffer actual monetary, out of pocket loss to recover on a fraud claim, and fraud without damage is no ground for an action. *Alliance*, 10 Cal.4th at 1240. Further, a plaintiff is NOT entitled to attorneys' fees in a lawsuit as damages for fraud. *Id* at 1241. Therefore, any allegation that Euler had to participate in this action, or any other legal action, does not constitute damages.

Euler alleges that "upon rescission of the Policy due to Marble Bridge's fraud and concealment" Euler will have to pay $25,000.00 to the criminals. Counterclaim ¶124. Euler alleges it "has also been damaged by incurring liability for the return of the $5,750 premium paid on the Policy." Counterclaim ¶125. Euler makes no attempt to connect its payments to the criminals (which it offered on March 6, 2012, before any insurance claims) to the insurance claims by Marble Bridge, and therefore fails to satisfy the "cause and effect" between Marble Bridge's alleged misrepresentation and Euler's resulting damages. See *Small*, 30 Cal.4th at 202.

Euler also argues that "Marble Bridge's false claims have directly caused Euler to be ensnared not only in this [sic] litigation, but in at least one other action . . .", specifically the *Factor King, LLC v. Euler Hermes N. Am. Ins. Co.* case in the Superior Court of Suffolk County New York (filed May 18, 2011). Counterclaim ¶125. The *Factor King* case had been filed and served and was already well under way in Fall 2011, even before Euler was informed about the criminal investigation in September 2011. **Facts Nos. 103, 104**. Euler's assistant general counsel confirmed that. **Fact No. 104**. Therefore, Euler fails to demonstrate any actionable nexus between Marble Bridge's alleged fraud and being "ensnared" in the ongoing *Factor King* case.

Further, well before Marble Bridge filed its claims with Euler, Euler knew about and had extensive knowledge of the Nature's Own fraud. **Facts Nos. 95, 96, 97, 98, 99, 100, 101, 102, 103, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 120**. Therefore, Euler's argument that Marble Bridge insurance claims caused Euler to be sued by Factor King, or kept Euler in the *Factor King* case, absolutely fails.

Despite the California Supreme Court's statement in *Alliance* that attorneys' fees are not a recoverable item of damages in a fraud and deceit claim, Euler nonetheless alleges that ". . . Euler has sustained significant additional expense in protracted litigation in the Factor King Case [and the instant case] . . ." and that "[s]uch additional expenses, including attorneys' fees, are properly recoverable as damages under such circumstances, not as attorneys' fees per se, but as expenses caused by Marble Bridge's withholding of information that it was obligated to

provide." Counterclaim ¶¶122, 123. Euler's attempt to re-classify attorneys' fees as "expenses" is nonsensical and unsupported by caselaw or statutory authority.

Euler had no damages. Other than to deny the claims, Euler otherwise ignored the Marble Bridge insurance claims and suffered no damages. Accordingly, Marble Bridge's motion for summary judgment as to Counterclaim Count V should be granted.

**IV.**

**CONCLUSION**

Summary judgment, or alternatively, partial summary judgment, should be granted pursuant to Federal Rule of Civil Procedure 56(c) as to Counts IV, and V of Euler's amended counterclaim.

There is no material disputed fact that should be decided by a jury as to whether Euler is entitled to rescission for misrepresentation, as the undisputed facts demonstrate that Marble Bridge did not make any material misrepresentations or omissions in filing its claim, Marble Bridge did not possess the fraudulent intent to deceive Euler in filing its claim, and at the time Marble Bridge filed its claim with Euler, Euler already possessed extensive knowledge of the Nature's Own fraud, and therefore could not and did not reasonably rely on Marble Bridge's claim.

There is no material disputed fact that should be decided by a jury as to whether Marble Bridge defrauded Euler, as the undisputed facts demonstrate that in filing its claim with Euler, Marble Bridge made no misrepresentations, had no knowledge of any alleged falsity regarding the claim, possessed no intent to defraud Euler, Euler did not reasonably rely on Marble Bridge's claim, and Euler suffered no damages as a result of Marble Bridge's claims.

/ / /

/ / /

/ / /

/ / /

/ / /

For the foregoing reasons, Plaintiff/Counter-Defendant MARBLE BRIDGE FUNDING GROUP, INC. respectfully requests the Court grant Marble Bridge's motion for summary judgment, or, in the alternative, motion for partial summary judgment.

Dated: May 26, 2015

LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation

By: /s/ Vincent P. Hurley
VINCENT P. HURLEY
Attorneys for Plaintiff/Counter-Defendant
MARBLE BRIDGE FUNDING GROUP, INC.