Renée C. Callantine (State Bar No. 155991)
RCallantine@cornerlaw.com
CORNERSTONE LAW GROUP
575 Market Street, Suite 3050
San Francisco, CA 94105
(415) 230-8737; (415) 974-6433 (Fax)

Neal W. Cohen
Andrew P. Saulitis
ncohen@halperinlaw.net
apslaw@msn.com
HALPERIN BATTAGLIA BENZIJA, LLP
40 Wall Street, 37th Floor
New York, NY 10005
(212) 765-9100; (212) 765-0964 (Fax)
Admitted *Pro Hac Vice*

*Attorneys for Defendant Euler Hermes American Credit Indemnity Company n/k/a Euler Hermes North America Insurance Company*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MARBLE BRIDGE FUNDING GROUP,<br><br>Plaintiff,<br><br>v.<br><br>EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY,<br><br>Defendant. | Case No. CV 12-02729 EJD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMS IV AND V** |
| EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>MARBLE BRIDGE FUNDING GROUP; NATURE'S OWN PHARMACY, LLC; RICHARD WALLACE; et al.,<br><br>Counterclaim Defendants. | Hearing Date and Time:<br>July 2, 2015 at 9:00 a.m.<br>Courtroom 4 – 5th Floor<br>San Jose Courthouse |



CORNERSTONE LAW GROUP

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES........................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED 1

INTRODUCTION/STATEMENT OF RELEVANT FACTS 1

ARGUMENT IN OPPOSITION 8

I. The Applicable Standards 8

II. Counterclaim IV for Rescission Under Sections 331, 338 and 359 of the California Insurance Code ........................................................................8

III. Counterclaim V for Fraud and Deceit/Intentional Misrepresentation Under California Civil Code Sections 1709 *et seq*. and 1572.............................14

CONCLUSION ..........................................................................................................19


CORNERSTONE LAW GROUP

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Admiral Ins. Co. v. Debber*,
442 F. Supp. 2d 958 (E.D. Cal. 2006), *aff'd*, 295 Fed. Appx. 171, 2008 U.S. App. LEXIS 20898 (9th Cir. Sept. 26, 2008) .......... 10, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 8

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
527 F. Supp. 2d 1084 (N.D. Cal. 2007) .......... 18

*Peterson v. Wells Fargo Bank, N.A.*,
No. 13-cv-03392-MEJ, 2014 U.S. Dist. LEXIS 94784 (N.D. Cal. July 11, 2014) .......... 17

**STATE CASES**

*Cummings v. Fire Ins. Exch.*,
202 Cal. App. 3d 1407, 249 Cal. Rptr. 568 (Cal. App. 2d Dist. 1988) .......... 6, 10, 11

*Factor King, LLC v. Euler Hermes N. Am. Ins. Co.*,
No. 11-15978 (N.Y. Sup. Ct. Suffolk Cnty. filed May 18, 2011) .......... 17

*Factor King, LLC v. Euler Hermes N. Am. Ins. Co.*,
No. 11-15978, slip op. (N.Y. Sup. Ct. Suffolk Cnty. Apr. 12, 2013) .......... 17

*Fross v. Wotton*,
3 Cal. 2d 384, 44 P.2d 350 (1935) .......... 5

*LA Sound USA, Inc. v. St. Paul Fire & Mar. Ins. Co.*,
156 Cal. App. 4th 1259, 67 Cal. Rptr. 3d 917 (2007) .......... 10

*Locke v. Warner Bros.*,
57 Cal. App. 4th 354, 66 Cal. Rptr. 2d 921 (1997) .......... 5

*Lovejoy v. AT&T Corp.*,
119 Cal. App. 4th 151, 14 Cal. Rptr. 3d 117 (2004) .......... 5

*Mamula v. McCulloch*,
275 Cal. App. 2d 184, 79 Cal. Rptr. 571 (Cal. App. 2d Dist. 1969) .......... 7

*McEwen v. New York Life Ins. Co.*,
187 Cal. 144, 201 P. 577 (1921) .......... 18

*McLaughlin v. National Union Fire Ins. Co.*,
23 Cal. App. 4th 1132, 29 Cal. Rptr. 2d 559 (Cal. App. 1st Dist. 1994) .............................. 18

*Mesmer v. White*,
121 Cal. App. 2d 665, 264 P.2d 60 (Cal. App. 2d Dist. 1953) .............................................. 16

*Mitchell v. United National Ins. Co.*
(2005) 127 Cal.App.4th 457 [25 Cal. Rptr. 3d 627] ........................................................ 10, 11

*Northwestern P. C. Co. v. Atlantic P. C. Co.*,
174 Cal. 308, 163 P. 47 (1917) .......................................................................................... 16

*Oates v. Glover*,
228 Ala. 656, 154 So. 786 (1934) ....................................................................................... 18

*People v. Scofield*,
17 Cal. App. 3d 1018, 95 Cal. Rptr. 405 (Cal. App. 2d Dist. 1971) ......................................... 6

*Reed v. King*,
145 Cal. App. 3d 261, 193 Cal. Rptr. 130 (Cal. App. 3d Dist.1983) ...................................... 15

*Santoro v. Carbone*,
22 Cal. App. 3d 721, 99 Cal. Rptr. 488 (1972) ......................................................................... 5

*Sterling Drug v. Benatar*,
99 Cal. App. 2d 393, 221 P.2d 965 (Cal. App. 1st Dist. 1950) ............................................. 18

*Taylor v. Wright*,
69 Cal. App. 2d 371, 159 P.2d 980 (Cal. App. 1st Dist. 1945) ............................................. 16

*Tenzer v. Superscope, Inc.*,
39 Cal. 3d 18, 216 Cal. Rptr. 130, 702 P.2d 212 (1985) ........................................................ 5

*West Coast Life Insur. Co. v. Ward*,
132 Cal. App. 4th 181, 33 Cal. Rptr. 3d 319 (Cal. App. 1st Dist. 2005) ........................... 9, 11

*Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*,
64 Cal. App. 3d 261, 134 Cal. Rptr. 427 (Cal. App. 1st Dist. 1976) ............................... 10, 11

*Young v. Flickinger*,
75 Cal. App. 171, 242 P. 516 (Cal. App. 2d Dist. 1925) ........................................................ 7

**OTHER STATUTES**

California Civil Code § 1572 .......................................................................................... 14

California Civil Code§ 1689(b)(7) ..................................................................................... 9

California Civil Code § 1709 .......................................................................................... 14



CORNERSTONE LAW GROUP

California Civil Code § 1710 .......... 14

California Insurance Code § 330 .......... 9

California Insurance Code § 331 .......... 9, 10

California Insurance Code § 332 .......... 9, 15, 17

California Insurance Code § 338 .......... 9

California Insurance Code § 481(a) .......... 18

California Penal Code § 550 .......... 4

California Insurance Code § 556 .......... 10

## RULES

Fed. R. Civ. P. 11 .......... 16

Fed. R. Civ. P. 56 .......... 1

Local Rule 7-4 .......... 1

**Other Authorities**

H. Walter Croskey, *et al*., *California Practice Guide: Insurance Litigation* at ¶ 5:249 .......... 11

CORNERSTONE LAW GROUP

This memorandum is submitted on behalf of defendant Euler Hermes American Credit Indemnity Company n/k/a Euler Hermes North America Insurance Company ("Euler") pursuant to Civil Local Rule 7-4 in opposition to the motion of plaintiff Marble Bridge Funding Group, Inc. ("Marble Bridge") to dismiss Counts IV and V of Euler's counterclaims as amended (ECF Dkt. Item No. 208), which are for rescission under sections 331, 338 and 359 of the California Insurance Code and for fraud and deceit/intentional misrepresentation under California Civil Code Sections 1709 *et seq*. and 1572.

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

1. Are there genuine issues of material fact precluding summary judgment on Count IV of the counterclaims, for policy rescission under sections 331, 338 and 359 of the California Insurance Code?

2. Are there genuine issues of material fact precluding summary judgment on Count V of the counterclaims, for fraud and deceit/intentional misrepresentation under California Civil Code Sections 1709 *et seq*. and 1572?

**<u>INTRODUCTION/STATEMENT OF RELEVANT FACTS</u>**

Before the Court is the motion by Marble Bridge, filed on May 26, 2015 (Dkt. Nos. 222-226), pursuant to Fed. R. Civ. P. 56 for summary judgment on Counts IV and V of Euler's counterclaims as amended, which are for rescission under sections 331, 338 and 359 of the California Insurance Code and for fraud and deceit/intentional misrepresentation under California Civil Code Sections 1709 *et seq*. and 1572. Contemporaneously, Euler has filed a motion for summary judgment seeking dismissal of Marble Bridge's claims

CORNERSTONE LAW GROUP

against Euler (Dkt. Nos. 218-221& 227-228) and incorporates by reference papers submitted on such motion, which contains matter also relevant to Marble Bridge's motion.[1]

The counterclaims in issue are contained in pages 47-60 and 63-78 of DEFENDANT EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS AS AMENDED dated and filed March 17, 2015 (ECF Dkt. Item No. 208), involving a false insurance claim Marble Bridge filed seeking to garner $1,498,544.56 in policy benefits to which it was not entitled, while concealing information known to Marble Bridge that would negate coverage.[2] Marble Bridge has chosen to assert claims against Euler not only for coverage under the Policy, but also for misrepresentation, asserting that "Euler knew" that its insured was involved in a widespread fraud (which it did not) when, ironically, Marble Bridge knew far more than Euler did about the fraud, and yet filed claims knowing that they were fraudulent, while trying to hold Euler blameworthy.

The counterclaims relate to a policy of credit insurance under which Marble Bridge now *concedes* there is no coverage, involving false claims.

Marble Bridge asserts that it is nevertheless entitled to summary judgment using a "Euler made me do it" defense, *i.e.*, "Marble Bridge . . . complied with Euler's instructions for filing a claim." MBFG Mem. 8. What were such "instructions"? *Marble Bridge does not cite any*. The Policy does not *require* that any claims be filed, let alone false claims,

---

[1]There are major differences between the parties' motions. Among the most significant is that Marble Bridge demonstrably had actual knowledge that Nature's Own's invoices were false when Marble Bridge filed its claim with Euler. Euler, on the other hand, did not have such knowledge, though Marble Bridge theorizes that Euler "already knew," though this is without evidence. While Euler is able to demonstrate actual knowledge on Marble Bridge's part, Marble Bridge is not able to do this on Euler's part, which dictates different results on the parties' respective motions.

[2]The "Policy" here is a "Domestic Markets Business Credit Insurance Policy" issued by Euler to Nature's Own Pharmacy LLC as insured on November 12, 2010, effective November 1, 2010, designated as Policy No. 5033862, renewed effective November 1, 2011, as Policy No. 5041669, comprising policy forms, declarations, endorsements and applications, incorporated by reference into the counterclaims. Stuehrmann Decl. Ex. D. Terms in **boldface** are as defined in the Policy.



CORNERSTONE LAW GROUP

nor did Euler "instruct" Marble Bridge to file any claims, let alone knowingly frivolous claims. Rather, the Beneficiary Endorsement empowering Marble Bridge with any rights provides that "[t]he Bank [Marble Bridge] *may* file a claim or request a loss settlement within the provisions of this Policy." Policy, Beneficiary Endorsement at ¶ 1(Stuehrmann Decl. Ex. D). If the insured or beneficiary chooses to file a claim, the Policy requires, under Section V (A) ("Filing a Claim"), that "[i]n order to be entitled to receive a loss payment under this Policy you must . . . [p]rovide us with proof that a covered loss has occurred." Policy Section V (A) (4) (Stuehrmann Decl. Ex. D).

The claim forms used to file claims electronically provide a box for the filer to check off, stating "I agree to supply the supporting documentation within 30 days of this filing. I understand that if I do not provide the documentation, Euler Hermes reserves the right to withdraw this claim." Stuehrmann Decl. Ex. L (Bates Nos. 000516, 000571, 000612, 000687, 000922, 000984, 001062, 001251). Here, Marble Bridge provided the purported "supporting documentation" (copies of invoices and bills of lading) concurrently with the Notification of Claim forms, and the 30-day time limit was not an issue.

We note that the Policy does provide that "[i]f a **Credit Limit** is cancelled on a **Buyer**, upon our [Euler's] written request and at our discretion, we *may require* you [Nature's Own or Marble Bridge] to file a claim for loss." Policy V (A) (5) (emphasis added) (Stuehrmann Decl. Ex. D). However, while multiple **Credit Limits** were undisputedly cancelled on **Buyers** on February 27 and 28, 2012, there was no such "written request" for Nature's Own or Marble Bridge to file a claim for loss.

On March 7, 2012, Marble Bridge made a conscious decision to file claims under the Policy (Candau Dep. Tr. 202:2-203:21 (Ex. S)) despite knowing that the "proof" that it filed did not represent actual **Shipments** of **Covered Products**, Ans. ¶ 71(c), (e), (f), (g), (i), (j), (k), (l), (n), (o), (q), (r), (t), (u), (v), (aa); Reply ¶ 71 (c), (e), (f), (g), (i), (j), (k), (l), (n), (o), (q), (r), (t), (u), (v), (aa) (all admitted); Ans. ¶ 72; Reply ¶ 72 (admitted); MB Supp. Int. Resp. ¶ 6, *i.e.*, that the claim was bogus. This information consciously was



CORNERSTONE LAW GROUP

withheld from Euler. Candau Dep. Tr. 205:2-206:12; Tr. 206:13-207:10 (Ex. S).

No one instructed Marble Bridge to file any claim, let alone a claim knowingly predicated entirely on fictitious invoices. Marble Bridge's proclamation that it filed claims "to protect its interests under the policy" is simply empty rhetoric. Neither Marble Bridge nor anyone else has a right to file a false insurance claim, nor is there any interest to "protect" in doing so, as this is illegal, indeed a crime under Section 550 of the California Penal Code.[3]

---

[3]Section 550 of the California Penal Code (the "Insurance Frauds Prevention Act,") criminalizes insurance claim fraud and provides that:

> (a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:
>
> (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.
>
> . . . .
>
> (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.
>
> . . . .
>
> (b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:
>
> (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
>
> (2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
>
> (3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.



CORNERSTONE LAW GROUP

Marble Bridge next argues that it "did not possess the intent to defraud Euler." MBFG Mem. 9. Marble Bridge's after-the-fact excuse is that "[b]ecause Euler would not communicate with Marble Bridge, Mr. Candau believed that either Euler was committing fraud or the buyers were legitimate and Euler was trying to avoid payment of the insurance coverage." Opp. Mem. 9. "Fact" Nos. 10, 24 (disputed). Instead of itself reaching out to Euler about what it had learned, Marble Bridge proceeded to file claims it knew were false, without saying anything. Marble Bridge's claim submission (Stuehrmann Decl. Ex. L) says nothing, other than that invoices (known to be false) are "past due."

"Since direct proof of fraudulent intent is often impossible, the intent may be established by inference from acts of the parties." *Santoro v. Carbone*, 22 Cal. App. 3d 721, 727, 99 Cal. Rptr. 488, 492 (1972) (citations omitted). Intent can (and often must) be established by circumstantial evidence. *Tenzer v. Superscope, Inc*., 39 Cal. 3d 18, 30-31, 216 Cal. Rptr. 130, 702 P.2d 212 (1985) ("To be sure, fraudulent intent must often be established by circumstantial evidence"). It may be "inferred from such circumstances as defendant's . . . failure even to attempt performance, . . ." *Id.*, 39 Cal. 3d at 30; *Fross v. Wotton*, 3 Cal. 2d 384, 393, 44 P.2d 350, 354 (1935) ("From the very nature of the action direct proof of the fraudulent intent of the parties is an impossibility. For this reason and because the real intent of the parties and the facts of the transactions are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties."); *see also Locke v. Warner Bros*., 57 Cal. App. 4th 354, 368, 66 Cal. Rptr. 2d 921, 928 (1997) (finding circumstantial evidence supporting intent and concluding that "the issue of fraudulent intent is one for the trier of fact.").

"The failure to disclose" information that is required to be disclosed "supports an inference of an intent to defraud." *See Lovejoy v. AT&T Corp*., 119 Cal. App. 4th 151, 161, 14 Cal. Rptr. 3d 117, 124 (2004) (denying summary judgment).

CORNERSTONE LAW GROUP

In the case of an insurance claim, "[o]ne who willfully submits a claim, knowing it to be false, necessarily does so with intent to defraud." *People v. Scofield*, 17 Cal. App. 3d 1018, 1026, 95 Cal. Rptr. 405, 409 (Cal. App. 2d Dist. 1971) (citation omitted); *Cummings v. Fire Ins. Exch*., 202 Cal. App. 3d 1407, 1421, 249 Cal. Rptr. 568, 576 (Cal. App. 2d Dist. 1988) (same).

Marble Bridge's effort to negate its intent to conceal information from Euler is confounding considering that: (a) it willfully submitted its claim knowing it to be false, and (b) it undeniably knew, as the result of a comprehensive investigation, about information that rendered the invoices false, but concealed that same information from Euler, purposefully to get money. Its conduct at the time speaks louder than its contrived excuses, and such conduct constitutes evidence of its intent to defraud. *Id*. Knowing that the invoices could not possibly be real, Marble Bridge submitted them anyway, without saying anything about what it knew to Euler, in an effort to garner $1,498,544.56 from Euler. This was a conscious, venal decision.

Marble Bridge's main assertion against claims of misrepresentation and concealment on its part is its purported excuse that "Euler already knew," and thus Marble Bridge's concealment was not material to Euler. But there is simply no evidence whatsoever that Euler had actual knowledge of any of this before Marble Bridge filed its claims. Given this obstacle, Marble Bridge instead seeks to rely on a theory that Euler "should have known," which is not the criterion, and, indeed, is immaterial. This is discussed in detail in Euler's Memorandum of Points and Authorities (Dkt. No. 218-1) at pages 17-23.

CORNERSTONE LAW GROUP

Marble Bridge also incorrectly seeks to rely on Euler's cancellations[4] of various **Credit Limits** on February 27 and 28, 2012. None of the cancellations was due to known fraud, and none of the cancellations actually says that.[5] Moreover, the cancellations took place long after Marble Bridge had bought the subject invoices and stopped funding Nature's Own, so the cancellations—purely prospective—could not have made a difference to Marble Bridge. The cancellation of a **Credit Limit** (applicable to *future* shipments only) is a basic right retained by Euler under the terms of the Policy, which provides: "During the Policy Period, we [Euler] have the right to reduce or *cancel* a **Credit Limit** on a **Buyer** for *future* **Shipments** by giving [Nature's Own] written notice." Policy Form IV. (CREDIT LIMITS) D. (emphasis added) (Stuehrmann Decl. Ex. D).[6] None of those cancellations mentions fraud (and do not require fraud), and all of them are as to future **Shipments** only, with the Policy otherwise remaining in force, as to any **Shipments** already made (though here there were none).

---

[4]Cancellation and rescission are distinct concepts, the former being prospective the latter being retroactive. *See Mamula v. McCulloch*, 275 Cal. App. 2d 184, 197, 79 Cal. Rptr. 571, 578 (Cal. App. 2d Dist. 1969) ("To 'cancel' a contract means to abrogate so much of it as remains unperformed. It differs from 'recission,' which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made.") (quoting *Young v. Flickinger*, 75 Cal. App. 171, 174, 242 P. 516 (Cal. App. 2d Dist. 1925)).

[5]Elsewhere, the Policy provides for cancellation on the grounds of misrepresentation: "If there are any material misrepresentations in the statements made by [the insured] to [Euler] or in the documents provided to us, we may cancel this Policy from inception upon fifteen (15) days written notice of cancellation delivered by mail or otherwise to you and you will forfeit any **Premium** paid. Any claims arising under such canceled Policy will not be payable." Policy Form I (Agreement and Representations) (C)(3). However, this provision was not invoked, nor could it have been, because misrepresentations that had been made in the application did not come to light until later. Indeed, had not Marble Bridge not concealed relevant information that it had, Euler would have been able to invoke this provision, instead of becoming ensnared in litigation over whether there was fraud.

[6]Each of the notices stated: "Effective as of the date of this endorsement [February 27, 2012], please be advised that your Credit Limit on this Buyer has been cancelled as to any future Shipments." MBFG 002316 (**Buyer** International Air Cargo LLC); MBFG 002314 (**Buyer** Apothecary Innovations LLC); MBFG 0002316 (**Buyer** Florida Beef Cooperative LLC); MBFG 002318 (**Buyer** Equine Distributors Inc.); MBFG 002320 (**Buyer** Cambri-Savash Investments, Inc.) (Candau Decl. Ex. 2).



CORNERSTONE LAW GROUP

CORNERSTONE LAW GROUP

The March 6, 2012 letter referred to by Marble Bridge (Hurley Decl. Ex. LL) was not a rescission of the Policy, but rather, merely a condition-laden *offer* to effect rescission subject to the "require[ment] that it be formally reflected in appropriate documentation, and such rescission shall not be effective unless and until such documentation has been fully executed." Marble Bridge objected to it (Hurley Decl. Ex. OO), and no such offer was ever accepted by anyone, let alone documented as required, and the offer lapsed. It was a dead letter, which Marble Bridge itself has conceded in deposition testimony. Candau Dep. Tr. 220:1-221:7 (Ex. S).

## ARGUMENT IN OPPOSITION

### I. The Applicable Standards

The standards for summary judgment are well known and not in issue. *See* Euler Memorandum of Points and Authorities (Dkt. No. 218-1) at pp. 5-7. While this is not the case with Marble Bridge's claims, there are demonstrable issues of fact in connection with Euler's counterclaims for rescission and concealment against Marble Bridge, with ample evidence from which "a reasonable jury, viewing the evidence in the light most favorable to [Euler], could resolve the material issue[s] in [Euler's] favor" on those counterclaims. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Indeed Marble Bridge has admitted filing its claim on March 7, 2012 without informing Euler of *anything* that it learned in connection with its January-February 2012 investigation about the non-existence of any transactions in goods underlying the invoices it submitted to Euler seeking nearly a million and a half dollars in Policy benefits.

### II. Counterclaim IV for Rescission Under Sections 331, 338 and 359 of the California Insurance Code

The elements of a claim for rescission of an insurance policy for concealment (Count IV of the Counterclaims) are provided by statute, to wit, Sections 331, 338 and 359 of the California Insurance Code and related provisions.

Section 331 of the California Insurance Code provides that "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."

Section 330 of the California Insurance Code provides that "Neglect to communicate that which a party knows, and ought to communicate, is concealment."

Section 332 of the California Insurance Code provides that "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

Section 338 of the California Insurance Code provides that "An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind."

Section 359 of the California Insurance Code Section 359 provides that "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

Under Section 332 of the California Insurance Code, Marble Bridge, as a "party to a contract of insurance" had an affirmative obligation to "communicate to [Euler], in good faith, all facts within [its] knowledge which are . . . material to the contract."

Section 1689(b) (7) of the California Civil Code provides that "[a] party to a contract may rescind the contract in the following cases: . . . Under the circumstances provided for in . . . Sections 331, 338 [and] 359 . . . of the Insurance Code . . . ."

> California Insurance Code section 332 provides that each party to a contract of insurance must communicate to the other, in good faith, all facts within his knowledge which are, or to which he believes to be, material to the contract. As such, a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy ab initio. *West Coast Life Insur. Co. v. Ward*, 132 Cal. App. 4th 181, 187, 33 Cal. Rptr. 3d 319 (Cal. App. 1st Dist. 2005); Cal. Insur. Code § 331. California Insurance Code section 330



CORNERSTONE LAW GROUP

> defines "concealment" as "[n]eglect to communicate that which a party knows, and ought to communicate." Section 359 of the California Insurance Code expressly authorizes rescission of a policy where "a representation is false in a material point, whether affirmative or promissory, . . . ." Such rescission of a policy applies to all insureds under the contract, unless the contract provides otherwise. Cal. Insur. Code § 650.

*Admiral Ins. Co. v. Debber*, 442 F. Supp. 2d 958, 964 (E.D. Cal. 2006*), aff'd*, 295 Fed. Appx. 171, 2008 U.S. App. LEXIS 20898 (9th Cir. Sept. 26, 2008).

"Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." ([Cal. Ins. Code] § 331.) "Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance … ." (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 469 [25 Cal. Rptr. 3d 627], citations omitted (*Mitchell*).) "Therefore, misstatement or concealment of 'material' facts is ground for rescission even if unintentional. The insurer need not prove that the applicant-insured actually intended to deceive the insurer." (*Croskey et al*., [Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) (rev. #1, 2007)], ¶ 5:169, p. 5-36.9.). *LA Sound USA, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 156 Cal. App. 4th 1259, 1269-70, 67 Cal. Rptr. 3d 917, 924-25 (2007) (rejecting claim that the insurer could not rescind the policy because the misrepresentations were unintentional); *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal. App. 3d 261, 134 Cal. Rptr. 427 (Cal. App. 1st Dist. 1976) (" [the insureds'] failure to disclose . . . information constituted misrepresentation and concealment of material facts, *whether the non-disclosure was intentional or unintentional*") (emphasis added).[7]

[7]Marble Bridge cites *LA Sound* and footnote 7 of *Cummings v. Fire Ins. Exch.*, 202 Cal App 3d 1407, 1414, 249 Cal. Rptr. 568, 571 (1988) for the proposition that "rescission for false claims requires a fraudulent intent" unlike misrepresentations in policy applications. The Insurance Code makes no such distinction. *LA Sound* cites only a general treatise and the Cummings footnote involves voiding a policy "based upon the insured's violation of the standard fraud and concealment clause (and/or Ins. Code, § 556 [since repealed]), neither of which is applicable.



CORNERSTONE LAW GROUP

To establish that a misrepresentation or concealment is material, the insurer need not prove an actual intent to deceive; an unintentional but material misrepresentation or concealment is sufficient. *Id.*, 442 F. Supp. 2d at 966 (citing *West Coast Life Insur. Co. v. Ward*, 132 Cal. App. 4th 181, 187, 33 Cal. Rptr. 3d 319 (Cal. App. 1st Dist. 2005)).

Furthermore, the same principles apply to *claims* under an insurance policy:

> Section 359 [of the California Insurance Code] does not explicitly limit the insurer's right to rescission to pre-issuance misrepresentations. To the contrary, section 359 provides that the injured party has a right to rescind the policy “from the time the representation becomes false,” suggesting that the right to rescind can arise after issuance of the policy. *See also*, *Mitchell v. United Nat. Ins. Co.*, 127 Cal. App. 4th 457, 473, 25 Cal. Rptr. 3d 627 (2005)(“Both Insurance Code sections 331 and 359 . . . apply to misrepresentations made at any time.”); *Cummings v. Farmers Ins. Exchange*, 202 Cal. App. 3d. 1407, 1419, 249 Cal. Rptr. 568 (1988) (Croskey, J.) (holding that an insurer was entitled to void the insurance contract based on the insured's intentional concealment or misstatement of material facts in connection with a claim for policy benefits); H. Walter Croskey, *et al.*, *California Practice Guide: Insurance Litigation* at ¶ 5:249 (discussing *Cummings*, *supra*, and stating: “Although the court did not use the word 'rescission,' this appears to be a rescission of the policy within the meaning of [section 359].”).

*Twin City Fire Ins. Co. v. Mitsubishi Motor Credit of Am., Inc.*, No. SACV 04-00043 CAS (MLGx), 2006 U.S. Dist. LEXIS 97165, *41-42, 2006 WL 5164189 (C.D. Cal. Aug. 15, 2006).

What is remarkable here is that Marble Bridge has admitted that it had learned—and clearly knew—from a field investigation that there were no products, no suppliers of products, no shipments of products, no one to receive any shipments of products, i.e., that the invoices purchased from Nature’s Own were false and did not represent actual transactions in goods. Ans. ¶ 71(c), (e), (f), (g), (i), (j), (k), (l), (n), (o), (q), (r), (t), (u), (v), (aa); Reply ¶ 71 (c), (e), (f), (g), (i), (j), (k), (l), (n), (o), (q), (r), (t), (u), (v), (aa) (all

CORNERSTONE LAW GROUP

CORNERSTONE LAW GROUP

admitted); Ans. ¶ 72; Reply ¶ 72 (admitted); MB Supp. Int. Resp. ¶ 6. The **Buyers** which Marble Bridge had learned were not bona fide or had no premises and which had not actually purchased any **Covered Products** or received **Shipments** included International Air Cargo, LLC, Rancho Linda Marchadores LLC, Iberian Horse Association of America, Inc., Monde Group LLC, and Phantom Sport Horses LLC), Ans. ¶ 114; Reply ¶ 114 (admitted).

Marble Bridge has admitted that it withheld this information from Euler in filing its claim. It now admits that in submitting its claim, it did not inform Euler of any of the matters referred to in the preceding items. Ans. ¶ 75; Reply ¶ 75 (admitted).

Specifically, Marble Bridge's President Paul Candau, who directed the claim filing, testified in his deposition that he never advised anyone from Euler of any of the information that he had received over the preceding three months of investigation regarding the lack of product, lack of shipment and lack of receipt:

> Q. At the time the claim was filed, did you advise anyone from Euler that those invoices did not, in fact, represent product that was manufactured, shipped or received?
>
> A. No.
>
> Q. Did you advise anyone from Euler that you were having ongoing communications with the Federal Bureau of Investigation, with a special agent of the FBI involved in white collar crime investigations, in which the insured, Nature's Own, its principals, and the buyers were the subject of interest?
>
> A. No.
>
> . . . .
>
> Q. . . . I'm just asking whether you informed anyone from Euler about any such belief.
>
> A. No.
>
> Q. Did you inform anyone from Euler that you had commissioned an investigation by a private detective to check

> out whether there, in fact, were businesses behind the buyers' names and addresses, that you had received reports from the investigator, none of which could verify the actual existence of product, businesses or places where product could have been shipped?
>
> A. No.
>
> Q. Did you share any information that you received from the investigator with anyone from Euler in connection with the filing of your claim?
>
> A. No.

Candau Dep. Tr. 205:2-206:12 (Ex. S).

> Q. And you knew you had that information at the time; correct? There was no doubt in your mind that you had that information in your possession and --
>
> A. Which information?
>
> Q. Information that you had received from Chuck Wall, CSC, information that we've described at length today?
>
> . . . .
>
> THE WITNESS: Yes.

Candau Dep. Tr. 206:13-207:10 (Ex. S).

Despite his knowledge of fictitious invoices Candau persisted in asserting the claim for coverage:

> Q. At any time did you seek to withdraw the claim that had been filed or any portion of the materials that comprise the claim filing?
>
> A. No.

Candau Dep. Tr. 213:20-23 (Ex. S).

Nor is reliance even an element under Sections 331, 338 and 359 of the California Insurance Code, which give grounds for *rescission*. The vice that those provisions of the Insurance Code are meant to address is misrepresentation and concealment, whether

successful or not. To require reliance would be to emasculate the provisions, and to rewrite what the Legislature has already written definitively. In any event, Euler's reliance can be presumed, because the Policy remained in force, to Euler's detriment, as it was not aware of the fraud.

Thus, there is no basis for summary judgment as to Count IV for rescission under. Sections 331, 338 and 359 of the California Insurance Code.

## III. Counterclaim V for Fraud and Deceit/Intentional Misrepresentation Under California Civil Code Sections 1709 *et seq.* and 1572

Under Section 1709 of the California Civil Code, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Section 1710 of the California Civil Code provides that "[a] deceit, within the meaning of the last section, is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [and] 3. *The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact*" (emphasis added).

Section 1572 of the California Civil Code provides that "[a]ctual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. *The suppression of that which is true, by one having knowledge or belief of the fact*; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive" (emphasis added).

CORNERSTONE LAW GROUP

CORNERSTONE LAW GROUP

"Concealment is a term of art which includes mere nondisclosure when a party has a duty to disclose." *Reed v. King*, 145 Cal. App. 3d 261, 265, 193 Cal. Rptr. 130 (Cal. App. 3d Dist.1983).

As discussed above, there is more than enough evidence that Marble Bridge knew and intentionally suppressed, facts that Marble Bridge was affirmatively obligated to communicate to Euler under Section 332 of the California Insurance Code, *i.e.*, Marble Bridge, as a "party to a contract of insurance" was affirmatively obligated to "communicate to [Euler], in good faith, all facts within [its] knowledge which are . . . material to the contract." Moreover, Marble Bridge's own credit insurance expert testified that the information Marble Bridge withheld "would that be information that someone in Euler's position would want to know about in terms of what to do with this relationship going forward" and "yes, Euler would want to know that." Fiertz Dep. Tr. 82:7-83:9 (Ex.F). Marble Bridge's credit insurance expert further testified that information that Marble Bridge had "actually instigated [an FBI investigation] would that be information that Marble Bridge should share with Euler who ultimately might be asked to take on some of the risks involved." Fiertz Dep. Tr. 84:2-9 (Ex. F). *See also* Fiertz Dep. Tr. 84-88 (Ex. F) (testifying that Marble Bridge would be "duty bound" to communicate adverse information that it had obtained to Euler in filing a claim).

Marble Bridge's credit insurance expert further testified that as to Marble Bridge "taking those invoices and send them to Euler and file a claim with no other information other than those invoices, total of invoices and bills of lading" "I think they should have provided more information than just that." Fiertz Dep. Tr. 88:2-18 (Ex. F). The invoices and bills of lading submitted by Marble Bridge in support of its claim were false in a material point, in that they did not represent actual **Shipments** of any actual **Covered Products**, which did not exist. Ans. ¶ 85); Reply ¶ 85 (admitted).

By submitting "invoices" and "shipping documents" that it knew were bogus, Marble Bridge was representing (and pretending) that these substantiated the existence of

actual **Shipments** of **Covered Products** (a requirement under the Policy)**,** while knowing such Shipments did not occur. That is fraud and concealment (if not criminal), and no amount of semantics or after-the-fact excuse can change this.

As stated in *Mesmer v. White*, 121 Cal. App. 2d 665, 264 P.2d 60 (Cal. App. 2d Dist. 1953), the issue of "whether plaintiff had notice of facts sufficient to put a prudent man upon inquiry and if so, whether an inquiry, reasonably conducted, would have disclosed to him the true state of affairs" is a "question, of course, . . . one of fact for the trial court," *id*., 121 Cal. App. 2d at 674 (citing *Northwestern P. C. Co. v. Atlantic P. C. Co*., 174 Cal. 308, 312, 163 P. 47 (1917) and *Taylor v. Wright*, 69 Cal. App. 2d 371, 384, 159 P.2d 980 (Cal. App. 1st Dist. 1945)).

Marble Bridge also claims summary judgment on the counterclaims is warranted because Euler already knew the companies were fraudulent before Marble Bridge filed its claim and thus could not have misrepresented or omitted material facts. While there is no evidence that Euler actually knew anything of the sort (or any of the things Marble Bridge withheld), this, at the very least, is a sharply disputed fact issue. See Stuehrmann Decl. ¶¶ 11-18 (presenting what Euler did and did not know during the relevant time frames). On its part, Marble Bridge relies on speculation and on the argument as to what Euler "should have known" rather than what it actually knew, using the wrong criterion.

Marble Bridge also asserts that Euler has not suffered damages from Marble Bridge's concealment and misrepresentation. Marble Bridge Mem. at 20. Marble Bridge simply asserts that attorneys' fees are not generally recoverable, but ignores the fact that Euler is not claiming attorneys' fees for its defense of this action as an element of damages in connection with its Counterclaim V.[8] But Marble Bridge does not, and cannot, overcome Euler's factual assertion that Marble Bridge's concealment of information to which Euler was entitled by law caused Euler to incur legal expense *elsewhere*.

[8] Euler reserves the right to seek attorneys' fees under Fed. R. Civ. P. 11 and as otherwise available for baseless litigation on Marble Bridge's part.



CORNERSTONE LAW GROUP

Not only has Euler been ensnared in this litigation, but in at least one other action, *Factor King, LLC v. Euler Hermes N. Am. Ins. Co.*, No. 11-15978 (N.Y. Sup. Ct. Suffolk Cnty. filed May 18, 2011), in which, on April 12, 2013, Euler was denied summary judgment directly because it did not have evidence to show that there were no **Covered Products** or **Shipments** under a policy involving Marsha Kay Holloway a/k/a Anette Zimmerman (Nature's Own's "account manager") and her confederates and many of the same **Buyers** that Marble Bridge knew were fake, which was evidence *that Marble Bridge had but withheld and concealed from Euler* a year earlier, in order to pretend there were such products and shipments in existence.

The very evidence and information suppressed by Marble Bridge, that it was required to provide to Euler (see Cal. Ins. Code § 332) was the major factor in the court's denial of summary judgment, wherein the court stated:

> Euler Hermes has not established its entitlement to judgment as a matter of law. . . . *Euler Hermes has failed to tender any evidence affirmatively demonstrating that no goods were shipped* by US Hay and, instead, relies on Factor King's failure to produce such evidence. The failure to make a prima facie showing requires denial of the cross motion regardless of the sufficiency of the opposing papers [citation]. Accordingly, the cross motion is denied.

*Factor King, LLC v. Euler Hermes N. Am. Ins. Co.*, No. 11-15978, slip op. at 4 (N.Y. Sup. Ct. Suffolk Cnty. Apr. 12, 2013) (emphasis added). As a result, Euler has sustained significant expense in protracted litigation in the *Factor King* case, which remains pending, as well as this case. *See Peterson v. Wells Fargo Bank, N.A.*, No. 13-cv-03392-MEJ, 2014 U.S. Dist. LEXIS 94784, *14-15 (N.D. Cal. July 11, 2014) ("As to Wells Fargo's argument that Plaintiffs have not adequately alleged damages, other courts in this district have held that unwarranted late fees and attorney's fees are sufficient at the motion to dismiss stage.") (citation omitted).

CORNERSTONE LAW GROUP

Also, upon rescission of the Policy due to Marble Bridge's fraud and concealment, Euler is nevertheless required by law to forfeit the earned premium on the Policy. California Insurance Code § 481 (a) provides that "[u]nless the insurance contract otherwise provides, a person insured is entitled to a return of his or her premium if the policy is . . . rescinded . . . ."). *See also McEwen v. New York Life Ins. Co.*, 187 Cal. 144, 145, 149, 150, 201 P. 577 (1921) (return of premium paid appropriate where insurer obtained cancellation based on insured's fraud). The statute does not contain an exception for rescission on the grounds of fraud.

Euler recognizes that actual damages can be difficult to prove, but that does not preclude a fraud claim. And "[nominal damages] can be awarded where a plaintiff has proven actual damage has occurred (and therefore has satisfied fraud's damages element), but the plaintiff cannot prove the amount of the actual damage." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1100 (N.D. Cal. 2007) (citing *Oates v. Glover*, 228 Ala. 656, 154 So. 786, 787 (1934); *McLaughlin v. National Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 1163, 29 Cal. Rptr. 2d 559 (Cal. App. 1st Dist. 1994); and *Sterling Drug v. Benatar*, 99 Cal. App. 2d 393, 400, 221 P.2d 965 (Cal. App. 1st Dist. 1950)). Euler does not concede that its damages are merely nominal, and difficulty in quantifying them does not make them less real, nor remove the issue from a jury's consideration.

**Conclusion**

The Court should deny Marble Bridge's motion for summary judgment on Counts IV and V of Euler's counterclaims for rescission of the Policy under sections 331, 338 and 359 of the California Insurance Code and for fraud and deceit/intentional misrepresentation under California Civil Code Sections 1709 *et seq*. and 1572, which have evidentiary support and implicate fact issues.

Dated: June 16, 2015

Respectfully submitted,

HALPERIN BATTAGLIA BENZIJA, LLP

/s/Andrew P. Saulitis
Andrew P. Saulitis
Neal W. Cohen
40 Wall Street – 37th Floor
New York, New York 10005
Tel: (212) 765-9100
Fax: (212) 765-0964
Email: apslaw@msn.com
ncohen@halperinlaw.net

-and-

CORNERSTONE LAW GROUP
Renée C. Callantine (State Bar No. 155991)
CORNERSTONE LAW GROUP
575 Market Street, Suite 3050
San Francisco, California 94105
(415) 230-8737; (415) 974-6433 (Fax)
Email: RCallantine@cornerlaw.com

*Attorneys for Defendant Euler Hermes American Credit Indemnity Company n/k/a Euler Hermes North America Insurance Company*